JOHN BURGESS, Respondent and Appellant, v. GOTTLIEB DEIERLING, Respondent and Appellant.

**Kansas City Court of Appeals, May 22, 1905.**

PARTNERSHIP: Division of Profits: Partner's Knowledge. The delicate relations which partners sustain to one another from its very nature makes it necessary that one may rely upon the other, rendering to him his full share of whatever is made out of the partnership property; and the fact that one partner might at the time have known of the transactions and the terms thereof, but failed to use his opportunity, does not alter the rule.

Appeal from Schuyler Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

AFFIRMED.

*Higbee & Mills* and *Smoot, Boyd & Smoot* for respondent and appellant.

(1) The doctrine of equity concerning undue influence is very broad, and is based upon principles of highest morality. It reaches every case, and grants relief where influence is acquired and abused, or where confidence is reposed and betrayed; 2 Pomeroy's Equity Jur., sec. 951. When a party is not a free agent and not equal to protecting himself, equity will protect him. Story's Eq. Jur., sec. 239; Sims v. Sims, 101 Mo. App. 417, 418. (2) The facts prove the deep rooted influence defendant acquired over plaintiff, and that he used it for his own advantage. The original deed, having been obtained by deception and imposition, should have been set aside and ignored, and defendant should have been required to account for all he received from the sale of the farm, the value of feeding his cattle and of the grain and feed turned over by plaintiff to defendant, and the court erred in requiring him to account for only one-half

of what he received from Tarr. Turner v. Turner, 44 Mo. 538; Dickson v. Kempinsky, 96 Mo. 259; Huguenin v. Basely, 14 Ves. 273; vol. 2, 2 Leading Cases in Eq., 4 American from 4 London Ed., by White and Tudor, (556) top p. 1156, (561) top 1160, (567) top 1164, (574) top 1169, (581) top 1174, (582) top 1175, (591) top 1176, (583) top 1186, (596) top 1188. (3) Once make out that there has been anything like deception, and no contract resting in any degree on that fraud can stand. Culbertson v. Young, 86 Mo. App. 282; 1 Beach, Mod. Eq. Juris., sec. 73, p. 74; sec. 88, p. 93; sec. 95, p. 101; Fox v. Macreth, 2 Cox 320, cited in vol. 1, part 1, White & Tudor's Lead. Cas. Eq. (4 Am.), from 4 London Ed., l. c. 195, lower half page, (125). Lord Thurlow's opinion, Ib. [138]-[148], top 205 and note beginning on top page 212.

*Fogle & Saxbury* for respondent and appellant.

(1) Fraud must be proved as an affirmative fact, and the proof must be of such a positive and definite character as to convince the mind of the chancellor of the facts alleged. Mere suspicion is not sufficient. It is never presumed, and if the facts shown, all consist as well with honesty as with fraud, the transaction should be held to be honest. Rumbolds v. Parr, 51 Mo. 592; Henderson v. Henderson, 55 Mo. 534; Ames v. Golmore, 59 Mo. 537; Dallam v. Renshaw, 26 Mo. 533; Chapman v. McIlwrath, 77 Mo. 38; Robinson v. Dryden, 118 Mo. 539; Bank v. Worthington, 145 Mo. 91; Young v. Kellar, 94 Mo. 581, 587; Priest v. Way, 87 Mo. 26; Baker v. Satterfield, 43 Mo. App. 591; Waddington v. Loker, 44 Mo. 132; Crow v. Andrews, 24 Mo. App. 160; Ridge v. Greenwell, 53 Mo. App. 79; Martin v. Estes, 132 Mo. 402; Warren v. Rechie, 128 Mo. 311. There should be tangible and substantial facts in evidence tending to prove the issue of fraud. Thresher v. Green Co., 105 Mo. 244; Garesche v. MacDonald, 103 Mo. 1; Gordon

v. Ismay, 55 Mo. App. 323; Shinnebarger v. Shelton, 41 Mo. App. 147. (2) In this case the burden of proving fraud resting entirely upon the plaintiff and the proof must- be clear, cogent and convincing. Ahern v. Collins, 39 Mo. 91; Albert v. Besel, 88 Mo. 153; Hazel v. Bank, 95 Mo. 60; Van Raalte v. Harrington, 101 Mo. 611; State ex rel. Robertson v. Hope, 102 Mo. 410; Robinson v. Dryden, 118 Mo. 539; Kerstner v. Vorweg, 130 Mo. 201; Ettlinger v. Kahn, 134 Mo. 498; State ex rel. v. Gates, 143 Mo. 64. (3) The fact that one is a more successful business man and a trader, than another, does not sustain the charge of fraud, in any case, let alone the charge made by the plaintiff in this transaction. Basye v. Jamison, 124 Mo. 551. (4) In this case all of the opportunities were present with plaintiff to find out all the facts. He owned the farm; lived upon it; sold one-half of it to defendant for $400; farmed it; knew William Tarr the purchaser; was with him at making of deed and once before; heard deed read over; saw the deed, from Tarr to defendant; knew the consideration. The law requires everyone in the possession of his intellectual faculties to use them for his own protection and not to depend upon the court to act as a standing guardian and curator over his person and property and protect him in his carelessness, improvidence and credulity. Mires v. Summerville, 85 Mo. App. 186; Chain v. Ried, 18 Mo. App. 127; Commonwealth v. Tabin, 126 Mass. 207; Bishop v. Seal, 87 Mo. App. 260; Lewis v. Land Co., 124 Mo. 672; Sanderson v. Voelcker, 51 Mo: App. 328; Dunn v. White, 63 Mo. 181.

ELLISON, J.—The plaintiff instituted this action by filing a bill in equity in the circuit court at Lancaster, Schuyler county, whereby he charged defendant with fraudulent and wrongful acts and practices whereby the latter cheated and defrauded him in the matter of

113 app—25

the sale of his farm of 355 acres. The trial court found for the plaintiff in the sum of $2,186.25 and both parties appealed.

It appears from the evidence that plaintiff bought a farm in the southwestern part of Scotland county consisting of 355 acres and that he placed mortgages thereon aggregating $5,365, being some more than the price he paid. He was without ready money and paid for the farm out of the mortgage money he obtained at time of purchase. He built a house thereon at the cost of $800 and found himself unable to meet interest on his loan. After trying to get money of various parties and failing with each, he and the defendant, who resided at Queen City, got together and made an agreement whereby defendant suppiled him with live stock for the farm on conditions not necessary to state and paid him $400 in cash for one-half interest in the land, subject to the mortgage aforesaid. It clearly appears that they looked upon themselves as sustaining the relation of partners with each other in the transaction thus had. After a time, propositions for sale were made which need not be gone into further than to say that finally defendant learned that one Tarr, living in Schuyler county, owned a farm of 120 acres some two or more miles west of Queen City. He took Tarr over into Scotland county to look at the farm there, thus owned by plaintiff and himself. He introduced Tarr to plaintiff and showed him over the farm. Plaintiff was aware that the object was to sell to Tarr, but he and defendant do not agree as to what took place between them at that time and place. Plaintiff testified that defendant advised him to sell or trade with Tarr and that he thought the best thing to do would be for them to get rid of the farm; that he believed they could make $1,000 each out of it. Defendant testified that plaintiff refused to entertain any proposition save one exclusively of money and that he (plaintiff) would sell his undivided one-half interest in the farm, subject to the mortgage, for $1,000 and give up the "whole

thing" within a week. He further testified that he agreed
to this provided that he and Tarr could make a trade.
And so they separated with a promise on defendant's
part to notify plaintiff if he and Tarr came to terms.
But it seems that plaintiff went to Queen City before
he received notice and on meeting with defendant was
notified by him that he and Tarr had just concluded up-
on the terms of a trade. It was then arranged that all
three parties, with their wives, should meet at an attor-
ney's office that afternoon and make out deeds. They
did so. Plaintiff and defendant made a deed to Tarr for
the 355 acres and Tarr made a deed to defendant for the
120 acres. Tarr also made a deed of trust on the 355
acres to secure a note to defendant for $2,347.50. The
trial court found that the net value of the 120 acres con-
veyed by Tarr to defendant, after deducting a mortgage
with which it was encumbered, was $3,025, to which was
added the sum of $2,347.50, for which Tarr gave his note
and a deed of trust securing it on the 355 acres as just
stated, making a total profit to defendant on the sale
of 355 acres the sum of $5,372.50. The court then found
that plaintiff was entitled to one-half the latter sum less
the $500 paid by defendant to him, making $2,186.25 for
which judgment was rendered.

A careful examination of the evidence has satisfied
us with the result reached by the trial court. We reject
*in toto* the charges of original intention and design on
defendant's part to cheat or defraud the plaintiff. There
is no evidence of such fraud or fraudulent design. The
plaintiff and defendant entered into a fair understand-
ing with no concealments or wrongful ulterior purposes
on defendant's part. Indeed, the evidence shows that
defendant could not have known at the time of his orig-
inal deal with plaintiff whereby he acquired one-half in-
terest in the farm that he would make disposal of it to
Tarr, or any other person. The arrangement between
the two was undoubtedly thought by both to be to their
mutual advantage. The farm had not cost plaintiff as

much as the mortgage he placed upon it, unless perhaps the house brought it up to about that sum. He found himself without money to pay interest and unable to get it. In such situation this defendant offered him terms of purchase for one-half interest that, if properly carried out, would have been much to his advantage. This the plaintiff himself practically admitted in one part of his testimony.

But notwithstanding this, the evidence discloses two conditions which render imperative the affirmance of the judgment. It is shown, without substantial dispute, that the two were practically partners in the ownership of the Scotland county farm and its stock. It is further shown that plaintiff did not know what defendant was getting out of Tarr in their trade; at least, defendant did not make it known to him . It is true, plaintiff had every opportunity for knowing. He was present when the deeds were made. He might at any time that day have inquired of Tarr and found out. We do not discover that there was any effort on the part of defendant or any one else to conceal it from him. But the fact remains, that when defendant took Tarr to the farm as a prospective purchaser he had in view, of course, the trade that they finally made. Manifestly, he took him to view the partnership property. Plaintiff had a right as a partner to his full share of whatever resulted from these prior negotiations. It is true that defendant says that at the time of his arrival at the farm with Tarr he had made no terms with him, and that his offer of $1,000 for plaintiff's undivided half was conditioned on his being able to make a trade with Tarr. But we cannot separate ourselves from the conviction that defendant should not be allowed to take to himself, without division with plaintiff, the whole of the large profit made in the transaction with Tarr. The transaction between defendant and plaintiff, and between defendant and Tarr, and finally between all three of them when they met in Queen City, was really one transaction divided into

parts, and out of which defendant made the profit above stated. The delicate relations which partners sustain, one to the other—the very nature of that relation makes it necessary that each may rely upon the other rendering to him his full share of whatever is made out of the partnership property.

We conclude that the judgment should be affirmed. All concur.